**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION**

| | |
|---|---|
| ROBERT EARL HARDIMAN, II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:20-CV-57 SRC |
| | ) |
| ANNE L. PRECYTHE, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## Memorandum and Order

This matter comes before the Court on the motion of plaintiff Robert Earl Hardiman for leave to commence this civil action without prepayment of the required filing fee. Having reviewed the financial information submitted by Hardiman, the Court has determined that he lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $39.43. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss Hardiman's complaint for frivolousness and failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28

U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion to proceed in forma pauperis, Hardiman has submitted a certified inmate account statement. The certified inmate account statement shows an average monthly deposit of $197.17. The Court will therefore assess an initial partial filing fee of $39.43, which is 20 percent of Hardiman's average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372–73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but "does not accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction"

means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be construed within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914–15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Hardiman is an inmate at Moberly Correctional Center in Moberly, Missouri. He brings this action pursuant to 42 U.S.C. § 1983. He names as defendants: the Missouri Department of Corrections; the Missouri Board of Probation and Parole; Anne Precythe, the Director of the Missouri Department of Corrections; and Peg McClure, the Assistant Division Director. Defendants are sued in their official capacities only.

Hardiman claims that he was convicted in Jackson County, Missouri, in 2014. He asserts that Judge Burnett, his sentencing judge, unlawfully ordered the Missouri Department of Probation and Parole to present a false and "perjured" prior probation completion assessment report against him at his plea hearing. Hardiman states that this report allegedly showed violations of his probation that he had committed during his Suspended Imposition of Sentence (SIS). However, the "false report" *did not* apply "to the assault and armed criminal action charges that he was ultimately found guilty of in violation of double jeopardy." Hardiman alleges that ultimately, he

3

was wrongfully found guilty, convicted and sentenced to fifteen (15) years' of imprisonment at the Missouri Department of Corrections for "standing his ground" against an individual who was participating in a "mass organized disobedience."

Hardiman states that while in the Missouri Department of Corrections he has been through "foul housing conditions, harassed, assaulted and denied recreation, rehabilitation and other activities." He also alleges that he has also been made to quarantine because of the coronavirus, and offenders have been kept in lockdown due to positive cases of COVID-19 during the pandemic. Hardiman complains that he does not feel properly protected by Defendants during the pandemic, however, he does not indicate why that is the case. Nonetheless, he notes that he has not been released during this time period.

Hardiman states that "for the illegal and wrongful acts against" him he is seeking monetary damages in an amount of $750,000, as well as release from his conviction or clemency awarded by the Governor of Missouri.[1]

**Criminal Background**

A grand jury indicted Robert Earl Hardiman, Jr. on October 5, 2012. *State v. Hardiman*, No. 1216-CR03796 (16th Judicial Circuit, Jackson County Court). On July 25, 2014, Hardiman pleaded guilty to first-degree domestic assault and armed criminal action. After a sentence assessment report, the trial court sentenced Hardiman on September 25, 2014 to fifteen (15) years' imprisonment in the Missouri Department of Corrections. *Id.* Hardiman failed to file a direct appeal.

---

[1] Release from confinement is not available under 42 U.S.C. § 1983. To the extent plaintiff is seeking release from confinement, he must file a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

4

On December 23, 2014, Hardiman filed a motion for post-conviction relief pursuant to Missouri Supreme court Rule 24.035 seeking relief from his conviction and sentence. *Hardiman v. State*, No. 1416-CV29516 (16th Judicial Circuit, Jackson County Court). On March 10, 2015, the Office of the Public Defender was appointed to represent Hardiman. However, on August 28, 2015, he filed a voluntary dismissal of his post-conviction motion for relief. *Id.* On October 22, 2015, Hardiman filed a waiver of Missouri Supreme Court Rule 24.035, waiving his ability to challenge his conviction through a post-conviction action.

Despite filing a waiver in *Hardiman v. State*, No. 1416-CV29516 (16th Judicial Circuit, Jackson County Court), on December 12, 2015, Hardiman filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 24.035. *See Hardiman v. State*, No. 1516-CV2441 (16th Judicial Circuit, Jackson County Court). Accordingly, on December 29, 2015, the Court dismissed his post-conviction filing as both successive and in violation of the waiver he filed in *Hardiman v. State*, No. 1416-CV29516 (16th Judicial Circuit, Jackson County Court).

On October 3, 2016, Hardiman filed a state habeas corpus petition pursuant to Missouri Supreme Court Rule 91. *Hardiman v. Minor*, No. 16RA-CV01178 (14th Judicial Circuit, Randolph County Court). He presented six grounds for relief in his habeas petition: (1) the trial court should have ordered a change of venue; (2) he received ineffective assistance of trial counsel; (3) pretrial conditions at Jackson County Jail; (4) there were errors in the sentencing assessment report; (5) he had a bad brother who was the one who allegedly committed the first degree domestic assault; and (6) his life is difficult at Moberly Correctional Center. The court denied each of Hardiman's grounds for relief on March 3, 2018. *Id.*

Hardiman brought state habeas corpus petition in the Missouri Court of Appeals on March 3, 2017. *Hardiman v. Minor*, No. WD80877 (Mo.Ct.App.2017). The Missouri Court of Appeals denied his petition for writ summarily on July 18, 2017. *Id*.

Hardiman filed an application for writ of habeas corpus in this Court on August 4, 2017. *Hardiman v. Minor*, No. 4:17-CV-2213 JMB (E.D. Mo. 2017). The Court transferred his petition for writ due to venue purposes to the United States District Court for the Western District on August 9, 2017. *Hardiman v. Minor*, No 4:17-CV-669 ODS (W.D. Mo. 2018). The Western District of Missouri reviewed Hardiman's four grounds for relief in a written opinion issued on January 23, 2018.[2] *Id.* His action was dismissed by the district court, and the Eighth Circuit denied him a certificate of appealability on May 29, 2018. *Hardiman v. Minor*, No. 18-1315 (8th Cir. 2018).

**Discussion**

Hardiman's official capacity claims in this action against defendants Anne Precythe and Peg McClure are subject to dismissal. Additionally, his claims against the Missouri Department of Corrections and the Missouri Board of Probation and Parole are also subject to dismissal. Hardiman's conditions of confinement claims and claims relating to his sentencing assessment report must also be summarily dismissed.

**A. Official Capacity Claims**

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public

---

[2] Hardiman asserted in ground one of his petition that his conditions of confinement at Moberly Correctional Center were unlawful. His other grounds related to his claims that he was denied a speedy trial, a bail hearing, and due process of the law.

employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *see also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that an official capacity suit against a sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983").

Defendants Precythe and McClure are employees of the Missouri Department of Corrections. The Missouri Department of Corrections is an agency of the State of Missouri. Thus, Hardiman's official capacity claims are actually claims against the state. As noted above, a state is not a "person" for purposes of 42 U.S.C. § 1983. Since the State of Missouri and its officials are not § 1983 persons, Hardiman has failed to state a § 1983 claim. *See Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 948 F.2d 1084, 1086 (8th Cir. 1991) ("Section 1983 provides a cause of action against 'persons' only"). For this reason, neither the Missouri Department of Corrections nor the Missouri Board of Probation and Parole can have claims for damages brought against them in this action, as these entities are State entities and cannot be liable under § 1983.

Even if the Missouri Department of Corrections and the Missouri Department of Probation and Parole are assumed to be § 1983 "persons," Hardiman has still failed to assert that these Departments were constitutionally liable under § 1983.

To prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *See Kelly*, 813 F.3d at 1075. The liability of a governmental entity may attach if the alleged constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018); *see also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Hardiman thus has three ways in which he can assert the liability of a governmental entity.

First, Hardiman can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016); *see also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible . . . for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

8

Alternatively, Hardiman can establish a claim of liability based on an unconstitutional "custom." To do so, he must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). Finally, Hardiman can show municipal liability by establishing a deliberately indifferent failure to train or supervise. To do so, he must demonstrate a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Hardiman's complaint fails to mention any of these methods for establishing the liability of either the Missouri Department of Corrections or the Missouri Department of Probation and Parole. That is, his statement of claim contains no factual allegations concerning an official policy, an unofficial custom, or a deliberately indifferent failure to train or supervise, much less that any policy or custom or failure to train caused a violation of his constitutional rights at either the Missouri Department of Corrections or the Missouri Department of Probation and Parole. As such, plaintiff has not stated a claim of liability against either agency. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Accordingly, for the reasons discussed above, Hardiman's official capacity claims against defendants Precythe and McClure, as well as his

9

claims against the Missouri Department of Corrections and the Missouri Department of Probation and Parole, must be dismissed.

### B. Even Assuming Hardiman Brought Claims Against Defendants in Their Individual Capacities He Has Failed to State a Claim for Relief Against Defendants

Even if the Court were to presume that Hardiman intended to sue Defendants in their individual capacities, he has still failed to state a claim against defendants.

In a § 1983 case, liability is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).

In Hardiman's statement of claim, he never states that defendants Precythe or McClure did something to him personally, much less allege their direct responsibility for purportedly violating his constitutional rights. He does not, for example, assert that McClure or Precythe were aware of the conditions of confinement at Moberly of which he complains or that he contacted defendants about those conditions. Hardiman also fails to allege that Defendants were directly liable for the quarantine conditions during Covid-19.

Rather, Hardiman appears to assume Defendants' responsibility in light of their positions of authority. However, vicarious liability is inapplicable to § 1983 suits. *See Marsh*, 902 F.3d at 754. *See also Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 534-35 (8th Cir. 2009) (stating that in "a § 1983 case an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents"). Moreover, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). Accordingly, even if Hardiman is

10

presumed to have sued defendants McClure and Precythe in their individual capacities, he has failed to state a claim against them.

### C. Conditions of Confinement Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on those convicted of crimes. *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009). Conditions of confinement "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To state a plausible conditions-of-confinement claim, Hardiman must demonstrate both an objective and a subjective element. To satisfy the objective element, he must demonstrate he was confined in conditions that were sufficiently serious to pose a substantial risk of serious harm or deny him "the minimal civilized measure of life's necessities." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Hamner v. Burls,* 937 F.3d 1171, 1178 (8th Cir. 2019). To satisfy the subjective element, Hardiman must demonstrate that the defendants acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent if he or she "knows of and disregards . . . a substantial risk to an inmate's health or safety." *Saylor v. Nebraska*, 812 F.3d 637, 645 (8th Cir. 2016).

Here, the complaint fails to present facts establishing either the objective or the subjective element. Rather than supporting the proposition that he is being held in unconstitutional conditions of confinement, Hardiman either describes conditions of insufficient severity or relies entirely upon conclusory statements that the Court is not required to accept as true. For example, he makes one generalized statement that he was subjected to "foul housing conditions, harassed, assaulted and denied recreation, rehabilitation and other activities." This general and conclusory statement is simply not enough to state a claim for relief under the Eighth Amendment. *Iqbal*, 556 U.S. at

11

678; *Holifield v. Mississippi Cty. Sheriff's Off. Jail Adminstrator*, No. 1:19-CV-105-ACL, 2019 WL 4576880 (E.D. Mo. Sept. 20, 2019); *see also Beaulieu v. Ludeman,* 690 F.3d 1017 (8th Cir. 2012) ("Conditions, such as a filthy cell, may be tolerable for a few days and intolerably cruel for weeks or months." (quoting *Whitnack v. Douglas Cnty*, 16 F.3d 954, 958 (8th Cir. 1994))).

Hardiman also fails to allege facts permitting the inference that any particular individual actually knew of, and deliberately disregarded, a substantial risk to his health or safety. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true . . . the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"); *see also Iqbal*, 556 U.S. at 678; *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level"). Even self-represented plaintiffs are required to allege facts in support of their claims, and the Court will not assume facts that are not alleged. *See Stone*, 364 F.3d at 914–15. Thus, his conditions of confinement claims are subject to dismissal.

Additionally, Hardiman's assertions regarding quarantine during the Covid-19 pandemic also fail to state a claim upon which relief may be granted. Once again, his claims are conclusory, as he indicates that he did not feel protected during the pandemic, although he did not elaborate as to why. *Iqbal*, 556 U.S. at 678.

Moreover, he alleges that his rights were violated by unnamed defendants because he was required to quarantine during the pandemic. However, there is nothing, per se, unconstitutional about being held in jail during a pandemic or being required to quarantine. Measures must be taken to contain the spread of infectious diseases. *See DeGidio v. Pung*, 920 F.2d 525, 533 (8th

Cir. 1990) (determining that continuing failure of prison officials to institute a system to prevent the spread of tuberculosis violated the Eighth Amendment); *see also, Cameron v. Bouchard*, 815 Fed. Appx. 978, 986 (6th Cir. 2020) (explaining that the quarantining of "any inmate exposed to COVID-19 is strong evidence that [defendants] are responding reasonably to the risk posed by the virus"). As such, Hardiman's allegations that his Eighth Amendment rights were violated fail to state a claim for relief.

### D. Sentencing Assessment Claims

Lastly, Hardiman's claims relating to his alleged errors in his sentencing report that purportedly occurred prior to his sentencing in his criminal cases in July of 2014 are time-barred. Section § 1983 claims are analogous to personal injury claims and are subject to Missouri's five-year statute of limitations. *Sulik v. Taney County, Mo.*, 393 F.3d 765, 766–67 (8th Cir. 2005); Mo.Rev.Stat. § 516.120(4). Hardiman filed this lawsuit in September of 2020, past the five-year statute of limitations. Thus, he is unable to seek review of those claims in this instance.

### Motion to Appoint Counsel

Hardiman filed a motion for appointment of counsel. Because the Court is dismissing his claims pursuant to 28 U.S.C. § 1915(e)(2)(B), his motion for appointment of counsel will be denied as moot.

Accordingly, the Court grants Hardiman's [2] motion for leave to proceed in forma pauperis. The Court further orders that Hardiman must pay an initial partial filing fee of $39.43 within twenty-one (21) days of the date of this Order. He is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

The Court dismisses this action without prejudice for failure to state a claim and because it is legally frivolous subject to 28 U.S.C. § 1915(e)(2)(B).  A separate order of dismissal will be entered herewith.  Lastly, the court denies Hardiman's [3] motion to appoint counsel as moot.

So ordered this 27th day of May 2021.

*SLR.CR*

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**